[No. 22918. Department Two. May 19, 1931.]

CITIZENS STATE BANK, *Respondent,* v. C. D. HILLIS
*et al., Appellants.*[1]

*Williams & Davis* and *W. P. Bell,* for appellants.

*Coleman & Fogarty* and *Clarence J. Coleman,* for respondent.

BEALS, J.—Plaintiff, in its second amended complaint, sued upon a promissory note bearing date September 10, 1921, signed or endorsed by the defendants; payable to the order of Arlington Canning Company, a corporation, and by it endorsed in blank. By their amended answer to this complaint, defendants admitted the execution of the note, and in an affirmative defense set forth certain allegations which, they contended, showed an estoppel operating in their favor against plaintiff sufficient to defeat plaintiff's recovery

[1]Reported in 299 Pac. 374.

upon the note. The material allegations contained in this affirmative defense were denied by plaintiff in its reply. The action proceeded to trial before the court sitting with a jury, and, the burden of proof under the pleadings resting upon the defendants, at the close of defendants' case the court sustained plaintiff's motion for the discharge of the jury and the rendition of judgment in plaintiff's favor, as matter of law. Defendants' motion for new trial having been overruled, they appeal from the judgment entered against them.

The situation, as disclosed by the evidence, is briefly as follows: Arlington Canning Company had, for some time prior to the fall of 1921, been operating a plant for the canning of fruits and vegetables. The company had not been financially successful, and was unable to take care of the fall crop of blackberries grown in the neighborhood. In order to enable it to take care of this crop, the following agreement was entered into:

"The undersigned farmers and growers and producers of blackberries of Arlington, and vicinity, party of the first part, does agree to and with the Arlington Canning Company, a corporation of Arlington, the party of the second part, as follows, that is to say:

"The first party will deliver to the second party their blackberries for the year 1921, the second party will can the same at their plant in Arlington and the actual cost of the second party in the canning of said berries, including the operating expenses, cans, wages and overhead charges, will be paid by the party of the first part, and the financing of the canning will be represented by a joint note of the parties hereto, the money to be borrowed from the Citizens State Bank at Arlington after the berries are canned for the market, they will be stored, handled, and sold by the second party, and it may use the warehouse receipts as additional security for said notes.

"And it is understood that the second party will have the selling of said berries and will sell them at what in its judgment is the most advantageous price, the money borrowed representing the actual cost will be paid and the warehouse charges and such other incidental expenses as will necessarily accrue, after which the first party will receive 4c a pound for their berries.

"It is understood, however, that under present market conditions sufficient money could not be received to take care of the expenses and pay 4c a pound to the growers, hence the reservation made herein for warehouse storage charges which may be necessary in the storing and hauling of the berries until such a price can be obtained.

"It is understood that if the selling price of said berries will not equal such a sum as to pay the cost and expense and 4c a pound to the farmers, that the second party will cause notice to be served on the first party and a meeting will be had to determine what disposition will be made of said berries.

"It is further understood that the warehouse receipts representing the canning and storing will be assigned as additional security for the money borrowed on the joint note of the parties hereto.

"It is further understood that the first parties, the growers, is composed of a large number of small berry producers and that it may not be convenient or necessary or desirable that they all sign the note representing the money to be procured financing this transaction, but

"It is specifically agreed that every person signing this instrument specifically agreed and binds themselves that all or holding for the payment of said note representing the expenses provided herein as fully as tho each had signed said note and all the berries will be holding as herein provided for its payment, and the second party will not buy any blackberries from any person not signing this contract.

"It is further understood that the second party will keep a record of all berries received from the growers and will treat with the individual growers and pay the growers individually after the expenses herein pro-

vided for has been taken care of and will furnish a statement showing the items of expenses incurred hereunder upon the final settlement.

"In Witness Whereof the parties have hereunto set their hands and seals.

(Signed) C. D. Hillis, et al"

Pursuant to this agreement, the note sued upon was executed, the same being in form an ordinary promissory note, no reference to the contract being made therein. The note was by the payee endorsed and transferred to the bank, and with the proceeds the canning company undertook the canning of the blackberries delivered to it by the persons who signed the agreement, who later received from the canning company, by checks drawn upon respondent bank, the four cents a pound which, under the agreement, was to be paid for the fruit.

Prior to the execution of the note sued upon, the canning company was indebted to respondent in a considerable amount, some portion of the indebtedness having been standing for several years. During the fall of 1921, the canning company continued its financial relations with respondent, which had been its banker for several years, taking up some of its old notes and making new ones, paying its bills by checks drawn on its account with respondent, and placing its claims with respondent for collection. The president of respondent owned stock in the canning company, and it clearly appears that the agreement hereinabove set forth was submitted to him before it was signed, as was the promissory note herein sued upon.

From September 10, 1921, to the following 31st of December, the canning company deposited in respondent bank almost thirty-one thousand dollars, and during this period the canning company paid to respondent a considerable sum to apply on its indebtedness, as

evidenced by its promissory notes. It was customary for the canning company to deposit with respondent bills of lading for its shipments, with drafts attached, the proceeds of which were collected by respondent and credited to the company's account.

The canning company ceased to function early in 1922, and, after an attempt to operate the plant as a cooperative business, in May, 1923, in an action brought by respondent's president, a receiver for the canning company was appointed, with the result that the entire property of the canning company was subsequently sold at a receiver's sale, Mr. L. C. Palmer, respondent's president, being the purchaser. Demand for payment of the note sued upon was made June 14, 1923, this action being thereafter instituted.

It is evident that the continued operation of the cannery during the fall of 1921 was for the incidental benefit of respondent, as only through the successful operation of the cannery could respondent receive the money due it. It is also established that respondent, in September, 1921, thoroughly understood the financial situation of the canning company, and knew that it could not undertake to can the local blackberry crop unless some arrangement could be made by which the company could receive financial assistance, and that, as a result of this situation, certain of the farmers in the vicinity signed the agreement above quoted, and appellants signed the note herein sued upon. From the connection of respondent's officers with the business of the canning company, and particularly with the matters which resulted in the giving by appellants of the note with which we are here concerned, we are of the opinion that, from the evidence introduced by appellants, the jury would have been justified in finding that the bank received from the canning company money which it should have

applied upon the note here sued upon, instead of upon other indebtedness due it from the company. Under the agreement above quoted, the note herein sued upon should have been paid before the growers received the four cents a pound for their berries. While we find in the record no ground for holding that respondent was responsible for the fact that the canning company paid the growers for their berries before paying appellants' note, we are satisfied, from the evidence, that respondent's connection with the entire transaction was such that, if it did receive from the cannery any money which represented the proceeds of the sale of any of the blackberries, that money should have been applied by respondent upon appellants' note, rather than upon any other indebtedness due respondent from the canning company. We believe that the evidence introduced by appellants made a *prima facie* case which required respondent to proceed with its proof.

The judgment appealed from is reversed, with instructions to the trial court to grant a new trial.

TOLMAN, C. J., FULLERTON, MILLARD, and BEELER, JJ., concur.